```
IN THE UNITED STATES DISTRICT COURT
  FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


UNITED STATES OF AMERICA        )
                                )
        v.                      )         1:12CR269-1
                                )
STEVEN MICHAEL MILLER           )
```

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This matter is before the court on the motion of Defendant Steven Michael Miller ("Miller") to suppress all evidence seized and statements made by him following the search of his residence on June 5, 2012. (Doc. 12.) The parties have briefed the motion, and a hearing was held on September 4, 2012. For the reasons set forth below, the motion will be denied.

I.  BACKGROUND

On June 4, 2012, Detective Sergeant K.J. Cornell ("Cornell") of the Greensboro County Sheriff's Office submitted an application for a search warrant to Superior Court Judge Patrice Hinnant. The application provided in pertinent part:

> Your Affiant swears to the following facts related to the investigation to establish probable cause:
>
> On 4/18/2012, a confidential source of information/concerned citizen called the Greensboro DEA Resident Office (GRO) and stated that he/she received information directly from Steve and Jennifer Miller during previous conversations that the couple is involved in the

cultivation and sale of marijuana. The confidential source/concerned citizen stated that Steve Miller has stated that he grows marijuana inside his residence and Jennifer Miller stated they have a special room inside the residence used to grow marijuana. The confidential source/concerned citizen advised that Steve and Jennifer Miller live at 271 Spring Creek Road in Summerfield, NC and that Steve Miller's cellular telephone number is [redacted by court]. The confidential source/concerned citizen added that Steve Miller is an electrician and he has a business called J and S Electric. The confidential source/concerned citizen described Steve Miller as a white male; approximately 37-40 years of age; approximately 6'02" in height with dark hair with a gray streak.

Your Affiant conducted a computerized search of North Carolina Department of Motor Vehicles (NCDMV) for Steven Miller and located the subject described above. NCDMV records indicate Steve Michael Miller has a listed address of 271 Spring Creek Rd in Summerfield, NC, he is 39 years of age, 6'02" in height, and a NCDMV drivers license photo reveals he has dark hair with a gray/white streak.

On 4/23/12, members of the Rockingham County Sheriff's Office Vice & Narcotics unit received information from an investigator with the Greensboro Police Department that a confidential source of information had a [sic] personally observed a grow room (nine month prior) with approximately 300 marijuana plants in it at the house located at 271 Spring Creek Road in Summerfield, NC. The confidential source advised the subject who lives at 271 Spring Creek Road in Summerfield, NC owns an electrical company or an electrical warehouse.

The confidentiality of the aforementioned confidential sources of information is necessary to prevent physical reprisal should their identity become known. Additionally, if the identity of the confidential sources of information were to be divulged, it would negate

2

any future use of these subjects by the Guilford County Sheriff's Office, Greensboro Police, Greensboro DEA Resident Office or other law enforcement agencies.

Your Affiant conducted a computerized search of a law enforcement database for 271 Spring Creek Rd in Summerfield, NC and found the owner to be Steven M Miller, white, male, DOB: 01/19/1973, SSN: [redacted by court] and spouse Jennifer A Miller, white, female, DOB: 11/27/1974, SSN: [redacted by court]. Additionally, this database indicates this address is the listed address for J&S Electric Company Inc. which is classified as an electrical contractor business.

Your Affiant conducted a computerized search through a law enforcement database for previous criminal charges for Steven Michael Miller – SSN: [redacted by court] born on 01/19/1973 in the United States with the following results:
Offense Date: 4/3/1992 Charged with Possession Controlled Substances – Portage County, Ohio
Offense Date: 8/5/1994 Charged with Possession Drug Paraphernalia – Portage County, Ohio
Offense Date: 11/20/2003 Charged with Possession Drug Paraphernalia – Guilford County, NC
Offense Date: 11/20/2003 Charged with Possess Marijuana up to 1&1/2 OZ – Guilford County, NC
Offense Date: 5/5/2010 Charged with Possess Marijuana up to 1&1/2 OZ – Guilford County, NC

Your Affiant conducted a search of Rockingham County Web GIS/Tax Mapping and located there are [sic] eleven houses on Spring Creek Rd in Summerfield, NC to include 271 Spring Creek Rd. 2011 Tax Records indicate that 271 Spring Creek Rd Summerfield is owned by Steven M Miller and Jennifer A Miller. 271 Spring Creek Rd is listed as a 1.5 story, single family structure with an unfinished basement and 1,304 sq feet finished area. Your Affiant averaged the finished square footage listed for 2011 tax records for all eleven houses located and [sic] Spring Creek Rd in Summerfield, NC to include 271 Spring Creek Rd and found the average, listed finished square

footage for the eleven houses to be 1,631 square feet.

Your Affiant obtained subpoenaed Duke Energy billing records for a five month period from 11/23/2011 – 03/26/2012 for power usage for ten of the houses on Spring Creek Rd in Summerfield, NC including 271 Spring Creek Rd Summerfield, NC. Your Affiant found that the five month average power usage for 271 Spring Creek Rd was 6451.8 KiloWatt hours (kWh) per month. Your Affiant calculated the five month average for the power consumption for nine other residences located on Spring Creek Rd and found the average to be 2182.6 KiloWatt hours (kWh) per residence per month. These figures show that 271 Spring Creek Rd has nearly three (3) times the power consumption per month as houses on the same street of comparable finished square footage.

Additionally, the same subpoenaed Duke Energy billing records for the nine comparable residences on Spring Creek Rd indicate that during the billing period 3/26/12 there was a drop in the power consumption of all nine residences from the billing period 2/24/12, with an average drop of 624 KiloWatt hours (kWh) per residence. This drop is most likely due to the seasonal time of year with mild temperatures not requiring significant heating or cooling needs. Subpoenaed records for 271 Spring Creek Rd indicate that the power consumption during the billing period 3/26/12 increased 61 KiloWatt hours (kWh) from the previous billing period 2/24/12.

Agents/Officers from Greensboro DEA Resident Office conducted the physical surveillance on several occasions on 271 Spring Creek Rd and did not observe any activity or legitimate purpose (ie: welding, heavy electric machinery associated with a mechanic or wood shop) that would account for power consumption three times higher than the nine house average house average [sic] detailed above. Surveillance at night revealed no significant lighting on the interior or exterior

4

that was any different that [sic] the surrounding houses on the same street.

Additionally, tax records indicate 271 Spring Creek Rd is the newest built residence on the street being (built in 2005) with the average year of construction of the nine comparable residences mentioned above being 1993. With advances in energy saving building materials, electronics and appliances, one could assert that the power consumption for 271 Spring Creek should be lower than other houses built an average of twelve years prior. Additionally, with Steven Miller's occupation and expertise as an electrician running J & S Electric Company Inc one could conclude that he would be more aware or conscientious of [sic] his power consumption than someone not in the electrical field. Also, having the industry knowledge of energy cost saving devices and capabilities to install energy saving devices one could conclude his residence would have lower power consumption rather than three times higher than those detailed above[.]

Your Affiant knows through his experience with other indoor marijuana grow investigations that a significant amount of power is necessary to operate all of the equipment necessary to cultivate marijuana. Most notably, high power consumption is necessary to run the lights required to replicate sunlight for long hours and the fans and air conditioning required to remove the excessive heat that those lights create so the plants are not harmed. Your Affiant has conducted other investigations of indoor marijuana grows where subjects have diverted power before it comes into the meter of a house in an effort to circumvent the meter to avoid billing due to the high cost and to not alert the power company/law enforcement to the high power consumption.

Based on the aforementioned facts as presented to the Court, your Affiant requests that this Search Warrant be issued by the Court upon probable cause as given in this affidavit.

(Gov't Exh. 1.)

Judge Hinnant issued the search warrant on June 4, 2012, at 4:41 p.m. Cornell and other law enforcement officers executed the warrant the next day. According to the Government's brief, approximately 200 grams of marijuana were seized from Miller's vehicle, and some 105 marijuana plants, drug packaging materials, handguns, and several thousand dollars in U.S. currency were seized from Miller's residence.

At the September 4 hearing on the motion to suppress, Miller called Special Agent Daniel Kaplan ("Kaplan"), a 14-year veteran of the Drug Enforcement Agency in Greensboro. Kaplan testified that to his knowledge the informants referenced in Cornell's affidavit were two separate individuals and the April 18 informant (who had called his office) had not worked with his office before. He could not speak about the other informant's prior use, if any, by law enforcement. The court finds his testimony credible.

Miller now moves to suppress the evidence seized on June 5 as well as any statements made by him thereafter.

**II. ANALYSIS**

Miller offers three principal arguments to challenge the search of his residence: the warrant application lacks sufficient reliable information to establish probable cause; the information from the confidential informants is stale, dating

6

back to about ten months before the warrant was issued; and the references to "confidential sources" in the application misled Judge Hinnant into believing they were reliable informants previously used by law enforcement.[1] The Government responds that probable cause is evident on the face of the application and affidavit, the information from the confidential sources was not stale under the circumstances, and, alternatively, the good faith exception of United States v. Leon, 468 U.S. 897 (1984), applies because there is no basis to conclude that the applicant misled Judge Hinnant into believing that the sources of information were in fact reliable sources previously used by law enforcement.

The Fourth Amendment requires that search warrants be supported by probable cause. U.S. Const. amend. IV. Courts apply a "totality of the circumstances" analysis to determine whether probable cause exists to support a search warrant. Illinois v. Gates, 462 U.S. 213, 238 (1983). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular

---

[1] Miller does not challenge the requirement that the warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

7

place." Id. A reviewing court need only determine "whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." Massachusetts v. Upton, 466 U.S. 727, 728 (1984) (per curiam). In reviewing a probable cause determination, a court may consider "only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996). "When a search is conducted pursuant to a warrant, the determination of probable cause by the magistrate who issued the warrant is entitled to 'great deference,'" United States v. Randolph, 261 F. App'x 622, 625 (4th Cir. 2008) (unpublished opinion) (quoting United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990)), and the Defendant bears the burden of demonstrating that the warrant was illegal, see, e.g., United States v. Longmire, 761 F.2d 411, 417 (7th Cir. 1985); 6 LaFave, Search and Seizure § 11.2(b), at 42 (4th ed. 2011).

In this case, the court will assume (without deciding) that Miller has presented a sufficient showing that the search warrant was not supported by probable cause, because it can resolve the motion by turning to the good faith exception set forth in United States v. Leon, 468 U.S. 897 (1984). See United States v. Bynum, 293 F.3d 192, 194 (4th Cir. 2002) ("Assuming without deciding that no probable cause supported the warrant, we will proceed 'immediately to a consideration of the officers'

8

good faith.'"); United States v. Hurst, No. 1:12CR19, 2012 WL 3089743, at *3 (N.D.W. Va. June 22, 2012) (Kaull, M.J.), recommendation adopted by, No. 1:12CR19, 2012 WL 3079250 (N.D.W. Va. July 30, 2012). "Leon teaches that a court should not suppress the fruits of a search conducted under the authority of a warrant, even a subsequently invalidated warrant, unless a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. Andrews, 577 F.3d 231, 236 (4th Cir. 2009) (internal quotation marks omitted). "[E]vidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was objectively reasonable." Id. (internal quotation marks omitted). "Usually, searches conducted 'pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate [or judge] normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.'" United States v. Perez, 393 F.3d 457, 461 (4th Cir. 2004).

There are four situations in which an officer's reliance on a search warrant would not be "objectively reasonable": (1) the magistrate or judge in issuing a warrant "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of

9

the truth"; (2) "the issuing magistrate wholly abandoned his judicial role" as a detached and neutral decisionmaker; (3) the officer's "affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) "a warrant [is] so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." Id. (internal quotation marks omitted).

Miller argues that the first situation is present here and renders the good faith exception inapplicable. He contends that Cornell misled Judge Hinnant into believing that the confidential sources of information were different persons who were known by law enforcement to be reliable based on prior experience, when they were neither. The misleading statements, he contends, include the affidavit's reference to "confidential source[s] of information" and the portion of the affidavit that discourages any disclosure of their identity that would compromise their future utility. Miller argues that reasonably well-trained officers, had they known the truth, would have concluded that the search was illegal despite the judge's authorization because warrants issued based on anonymous tipsters require more corroboration.

Where a warrant is based in part upon information from a confidential informant, the court's "totality-of-the-circumstances" analysis focuses on the informant's "veracity" or

10

"reliability" and his or her "basis of knowledge." Wilhem, 80 F.3d at 119. "When an informant has proven to be reliable in the past and has firsthand knowledge of the criminal activity in question, probable cause exists for issuing a search warrant." United States v. Canady, 142 F. App'x 133, 135 (4th Cir. 2005) (unpublished per curiam opinion) (citing United States v. Chavez, 902 F.2d 259, 264 (4th Cir. 1990)). When an application for a warrant is supported by an anonymous informant's tip, however, the court must look to "the degree to which [the report] is corroborated." United States v. Lalor, 996 F.2d 1578, 1581 (4th Cir. 1993). In this regard, Miller argues that his case is like Wilhem, where the application was based solely on an affidavit that contained an anonymous tip from someone who allegedly observed marijuana sales from the defendant's residence and who provided an address which the affiant had verified through surveillance. The Fourth Circuit found that the affidavit "fell far short" of providing probable cause and refused to uphold it under Leon.

The court is not persuaded that Miller has demonstrated that Leon's good faith exception should not apply.

First, Miller has not provided any evidence that the two confidential sources were actually the same person, and Special Agent Kaplan (called at Miller's request) testified that, to his knowledge, the informants were indeed separate individuals.

11

Second, a fair reading of the affidavit does not support the inference that law enforcement had any history of using either informant as a known, reliable informant. Rather, it refers only to a "confidential source of information/concerned citizen" who called the Greensboro DEA office on April 18, 2012, and to the fact that on April 23, 2012, a Greensboro Police Department investigator informed the vice and narcotics unit of the Rockingham County Sheriff's Office that a "confidential source of information" had reported some nine months earlier that, based on personal observations, Miller was growing approximately 300 marijuana plants in his residence at 217 Spring Creek Road. The former clearly suggests an anonymous tipster (which Kaplan confirmed at the hearing). As to the latter, Kaplan testified at the hearing that he was unaware of whether the individual was anonymous or had been used by local law enforcement.

In any event, as to both informants the affidavit stated only:

> The confidentiality of the aforementioned confidential sources of information is necessary to prevent physical reprisal should their identity become known. Additionally, if the identity of the confidential sources of information were to be divulged, it would negate any future use of these subjects by the Guilford County Sheriff's Office, Greensboro Police, Greensboro DEA Resident Office or other law enforcement agencies.

(Gov't Exh. 1.) Nowhere does the affidavit represent that either informant had been used previously, but rather refers

only to future use. As noted, a reasonable reading of the affidavit is that the April 18 informant was an anonymous tipster, and even assuming that the affidavit could be construed to imply that the other informant (the April 23 reference) had been used previously by law enforcement, as Miller contends, Miller has not shown that such an interpretation would be false. During the hearing, Kaplan testified that he could only say that the April 18 informant who called his office had not worked with the DEA's office before; he could not speak to whether or not the other informant had been used previously by local law enforcement. Thus, because Miller has failed to show that the latter informant in fact had not been used by law enforcement, he fails to demonstrate that Cornell misled the reviewing judge.

Even if the court were to consider both informants as anonymous tipsters (requiring heightened scrutiny), an examination of the affidavit reveals important corroborating information. The two confidential informants provided detail not only as to Miller's address, physical description, age, distinctive hair (gray streak, which the court observed during the hearing), and spouse – all of which admittedly could have been obtained through public sources, see United States v. Mendonsa, 989 F.2d 366, 369 (9th Cir. 1993) ("[M]ere confirmation of innocent static details is insufficient to support an anonymous tip."), but see Lalor, 996 F.2d at 1581

13

("Corroboration of apparently innocent details of an informant's report tends to indicate that other aspects of the report are also correct."), but also Miller's personal cell phone number and place of work. All of this was verified by law enforcement and reported in the application.

More importantly, Cornell obtained the tax records for eleven homes on Miller's street and analyzed their square footage to compare it to that of Miller's house. Further, Cornell obtained billing records subpoenaed from Duke Energy for 11/23/11 through 03/26/12 for ten houses on Miller's street. These showed that Miller's five-month average power usage was nearly three times that of comparable homes of his neighbors – the difference between 2,182.6 and 6,451.8 kilowatt hours. Moreover, the records showed that although all nine neighbors' consumption fell an average of 624 kilowatt hours during the last month of the collected billing period (an occurrence Cornell attributed to the warmer unseasonal weather pattern), Miller's *increased* by 61 kilowatt hours.

The affidavit also noted that Greensboro DEA officers surveilled Miller's residence "on several occasions" but could not observe any activity that accounted for its unusual increased power consumption. Cornell advised Judge Hinnant that through his experience he was aware that marijuana growing operations require significant electrical power for the grow

lights and air conditioning.  In fact, Cornell was aware that in some cases indoor marijuana growers divert power from the power meter to avoid the higher costs associated with the operation.

In addition, Cornell's search of criminal records revealed that Miller had five previous drug convictions, including two marijuana possession convictions in 2003 and 2010, and two drug paraphernalia possession convictions in 1994 and 2003.  This supported the reasonable belief that any growing operation by Miller was related to illegal drugs and not to legitimate gardening.

All of this corroborating detail bolstered the reliability of the informants' information.  Rather than being like the anonymous tip in Wilhem, as Miller argues, this case is more similar to United States v. Clay, 521 F. Supp. 2d 633 (W.D. Mich. 2007).  There, the affidavit relied upon an anonymous tip as to marijuana growing, an address and description of the residence (which the affiant verified through the Michigan Secretary of State's office), a criminal records check of the defendant that revealed a prior conviction for manufacture and sale of marijuana based on a search of the residence that revealed the operation, and a report from the local power company that the defendant's electric usage was "high for a single residence and shows an abnormal fluctuation in month to month usage."  Id. at 637.  The defendant argued that the only

15

independent corroboration of the anonymous tip was the check on the address, criminal history, and electricity usage, leaving the incriminating information about marijuana "largely uncorroborated." Id. at 638. The district court disagreed and denied the motion to suppress, noting that while the tip, prior conviction, and identity of the defendant may not alone suffice to demonstrate probable cause, "the abnormal electricity usage pattern discovered at [the defendant's] residence places the affidavit on firm ground." Id. at 639. In reaching this conclusion, the court observed:

> Federal courts around the country have noted the relevance and weight of electricity-usage evidence in determining probable cause or the reasonableness of a search. "Corroboration from facts such as increased electrical usage may compensate for lack of information about an informant's reliability or the basis of his knowledge." U.S. v. Kattaria, 503 F.3d 703, 707, 2007 WL 2892027, *4 (8th Cir. Oct. 5, 2007)(warrant to use aerial thermal-imaging to detect excess heat from house was supported by probable cause where, *inter alia*, affidavit stated that subject's home used 1890-2213 kilowatt-hours of electricity per month over the previous six months compared to only 63-811 kilowatt-hours per month over the same period at nearby residences) (citing U.S. v. Olson, 21 F.3d 847, 850 (8th Cir. 1994)). See, e.g., U.S. v. Lindlow, 47 F.3d 1171, 1995 WL 57385 (6th Cir. Feb. 10, 1995) (probable cause supported issuance of search warrant where, *inter alia*, "investigation by DEA agents in Michigan revealed that the Lindow residence had recently consumed ten times more electricity than the average for the surrounding area"); U.S. v. Thomas, 2007 WL 1577725 (M.D. Tenn. May 30, 2007) (affidavit sufficed to establish probable cause where, *inter alia*, it provided data showing that in the six months preceding the warrant application, the subject

16

> premises consumed up to three times as much electricity as a smaller house nearby).
>
> Thus, even if the anonymous tip on its own were not entitled to much weight in determining probable cause, the court determines that the police officer's subsequent discoveries sufficed to establish probable cause to search Clay's home.

Id. at 639-40. Alternatively, and most relevant here, the court held that reliance on the warrant was also reasonable under Leon.

Here, the court finds that Cornell did not mislead the issuing judge, and it was at least objectively reasonable for him and law enforcement to rely on the issuance of the warrant, given the corroborating information that included the highly unusual increase in electricity usage that was factored over the calculated square footage of the neighboring homes and Miller's prior criminal record.

The application also contains the signature of an Assistant District Attorney with the notation "OK," indicating that Cornell also sought and obtained the approval of the local district attorney before submitting the application. This further supports the conclusion that Cornell's belief in the warrant's validity was objectively reasonable. See Mendonsa, 989 F.2d at 369-70 (finding that an officer who "sought advice from county attorneys concerning the substantive completeness of

17

the affidavit" before submitting the application acted in good faith in relying on the warrant).

Given all these additional facts, the court also cannot say that the affidavit is facially deficient or so lacking in indicia of reliability to render any reliance on the warrant objectively unreasonable.[2] Nor can the court say that Judge Hinnant abandoned her judicial role in reviewing it.

---

[2] Miller argued in his brief that the evidence in the warrant application relating to marijuana growing was stale. The information from the April 18, 2012 confidential informant was six weeks old by the time of the June 4, 2012 application, and information from the other informant was about ten months old. The Government contends that the information was not stale in light of the nature of the activity. For purposes of the Leon analysis, the court finds that the information in the affidavit was not so dated under the circumstances to render any reliance on the warrant unreasonable.

For a warrant to issue, the facts must be "so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." United States v. McCall, 740 F.2d 1331, 1335-36 (4th Cir. 1984) (quoting Sgro v. United States, 287 U.S. 206, 210-11 (1932)). Whether probable cause is lacking because the supporting information is stale must be determined by the circumstances of each case, not by pat formulas or quantification of the days. 740 F.2d at 1336. The Fourth Circuit has said that in examining the circumstances of a case, courts must look to the nature of the unlawful activity alleged, the length of the activity, and the nature of the property seized. Id. Probable cause can be found notwithstanding substantial gaps between the observation of the evidence and the issuance of the warrant. See id.

Many courts have held that longer lapses of time are permitted in cases involving ongoing criminal enterprises of an extended nature, such as marijuana growing. E.g., United States v. Minis, 666 F.2d 134 (5th Cir. 1982) (information about marijuana growing not stale after three months); United States v. Greany, 929 F.2d 523, 525 (9th Cir. 1991) (two-year-old information about marijuana growing not stale); United States v. Myers, 106 F.3d 936 (10th Cir. 1997) (five-month gap in information about marijuana growing not stale); United States v. McKeever, 5 F.3d 863 (5th Cir. 1993) (twenty-one-month-old time frame for illegal activity, including marijuana growing, not stale); United States v. Springer, No. 5:09CR9, 2009 WL 1048687 (N.D.W. Va. Apr. 20, 2009) (forty day-old information regarding marijuana growing not stale).

Therefore, assuming (without deciding) that probable cause is lacking, the good faith exception established by Leon justifies the officers' reliance on the validity of the warrant.

**III. CONCLUSION**

Having carefully considered all arguments by the parties and for the reasons set forth above,

IT IS THEREFORE ORDERED that Defendant Steven Michael Miller's Motion to Suppress (Doc. 12) is DENIED.

                                            /s/ Thomas D. Schroeder
                                            United States District Judge

September 14, 2012

---

Here, one confidential informant allegedly observed some 300 marijuana plants in Miller's residential grow room about ten months before the warrant issued, and the other informant/concerned citizen allegedly reported speaking with Miller and his wife about six weeks before the warrant issued. The court finds that, given the nature of the growing operation, the information in the warrant application is not stale. Indeed, the information from the informant on April 18, 2012, corroborated the information from the other informant learned some nine months earlier.